# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

VIRGIL M. SHOW,

    Plaintiff,

v.                                CASE NO. 08-CV-11064

COMMISSIONER OF                 DISTRICT JUDGE MARIANNE O. BATTANI
SOCIAL SECURITY,                  MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's partially favorable determination that Plaintiff was not disabled prior to February 1, 2006. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's partially favorable decision granting Plaintiff's claim for supplemental security income benefits from and after February 1, 2006. This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 10, 14.)

Plaintiff was 55 years of age at the time of the most recent administrative hearing. (Transcript, Dkt. 7 at 16.) Plaintiff's relevant employment history included work as a carpenter for a construction company. (Tr. at 74.) Plaintiff last worked in February 1991. (*Id.*)

Plaintiff filed the instant claim in January 2003, alleging that he became unable to work on December 9, 2002. (Tr. at 47, 50.) The claim was denied at the initial administrative stages. (Tr. at 23, 27.) In denying Plaintiff's claims, the Defendant Commissioner considered ischemic heart disease, angina, peripheral vascular/arterial disease as possible bases of disability. (*Id.*)

On March 17, 2006, Plaintiff appeared with counsel before ALJ John W. Belcher, who considered the case *de novo*. In a decision dated October 20, 2006, the ALJ found that Plaintiff was not disabled prior to February 1, 2006. (Tr. at 13-20.) Plaintiff requested a review of this decision on November 2, 2006. (Tr. at 12.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on February 6, 2008, when, after the review of additional exhibits[2] (Tr. at 10-11(letter from counsel)), the Appeals Council denied Plaintiff's

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v.*

2

request for review. (Tr. at 7-9.) On March 12, 2008, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

**B.      Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course

---

*Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference

from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only

for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If

6

the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. Administrative Record

A review of the relevant medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was seen on a number of occasions in the Emergency Medical Centre of Flint, Michigan. (Tr. at 124-27.) Plaintiff underwent quadruple coronary artery bypass surgery on December 9, 2002. (Tr. at 129-59.) In late 2002, Plaintiff was seen for a consultation by Charles A. Thompson, M.D. (Tr. at 128.) During this time, Plaintiff was also seen by Frederick R. Armenti, M.D. for a postoperative checkup, (Tr. at 161-62), and by Mohamed A. Almansour, M.D., for pain in his wrists, hips, and legs. (Tr. at 167-91.)

### E. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 9, 2002. (Tr. at 17, 19.) At step two, the ALJ found that Plaintiff's ischemic heart disease, angina, and peripheral vascular/arterial disease were "severe" within the meaning of the second sequential step. (Tr. at 19.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform any of his previous work. (*Id.*) At step five, the ALJ denied Plaintiff benefits prior to February 1, 2006, because Plaintiff could

perform a significant number of jobs available in the national economy. (Tr. at 19-20.) The ALJ then concluded that ". . . as of February 1, 2006, but not prior thereto, [Plaintiff] attained "advanced age" and, given his residual functional capacity, application of Medical-Vocational Rule 201.02 would fully support a decision of "disabled." (Tr. at 19.)

F.   **Analysis and Conclusions**

1.   **Legal Standards**

The ALJ determined that prior to February 1, 2006, Plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 19.) Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim.

2.   **Substantial Evidence**

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800

F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Less than a month after Plaintiff's cardiac surgery, Dr. Armenti reported that Plaintiff "looks terrific" and the doctor was "pleased to see how well [he] is doing." (Tr. at 161.) The Doctor gave Plaintiff permission to resume normal activities. (*Id.*) X-rays of Plaintiff's spine taken in February 2003 showed minimal changes at various levels but more advanced changes at the L4-L5 and L5-S1 levels, but with no fractures or misalignment of the vertebrae. (Tr. at 180.) That same month, Dr. Almansour stated that Plaintiff would not be able to resume his usual work for 6 months, but could undertake a job which did not require the use of the right arm. (Tr. at 183.) Dr. Almansour reported to the Disability Determination Service that Plaintiff was suffering from arm pain, carpal tunnel syndrome and back pain. (Tr. at 190.) He felt that Plaintiff could lift up to 10 pounds, could undertake reaching, grasping, pulling, or pushing activities, particularly with the left arm, but should not engage in lengthy standing or walking. (Tr. at 191.) Similar findings were made in March 2003 (Tr. at 174-75) and June and October 2003. (Tr. at 174-75, 203-06, 222-24.) In late October 2003, Dr. Franco, whom it appears from the record is Plaintiff's family physician, stated that Plaintiff suffered from a "slight limitation of physical activity" due to arthritis and that "more strenuous efforts should be discontinued." (Tr. at 207.)

In April 2004, Dr. Hasnie reported to Dr. Almansour that an exercise stress test showed "good exercise tolerance and normal heart rate and blood pressure," although Plaintiff was unable to achieve peak heart rate and the test was considered "sub-maximal." (Tr. at 230.) In August 2004, Dr. Hasnie reported to Dr. Almansour that a followup examination revealed no chest pain or cardiac symptoms, although Plaintiff described increased fatigue. (Tr. at 228.) EKG was normal. (Tr. at 229.) Dr. Almansour reported to the Disability Determination Service his belief

that Plaintiff could lift no more than 10 pounds and stand or walk less than two hours at a time. (Tr. at 237.)

During 2003 and 2004, Plaintiff was seen for neurological checkups by Dr. Tarakji. The doctor found that Plaintiff suffered from numbness in the hands and pain radiating into the legs "with occasional numbness without any weakness." (Tr. at 257.) Dr. Tarakji gave Plaintiff a series of injections. (Tr. at 258-60.) MRI scanning of Plaintiff's spine revealed degenerative lumbar spine disease without disc herniation and EMG testing revealed nerve root irritation. (Tr. at 263, 331.) In May 2005, Dr. Hasnie reported that a Cardiolite exercise stress test showed normal heart rate and blood pressure, but that blood perfusion testing revealed a "fixed apical wall defect," which the doctor felt was "likely due to soft tissue attenuation artifact." (Tr. at 347.)

At the administrative hearing, Plaintiff testified that he could stand for one-half hour before having any difficulties, that he could sit for one hour, and that he has chest pain approximately once a week. (Tr. at 368-70.)

A vocational expert ("VE") also testified at the administrative hearing, responding to a hypothetical question presuming a person of Plaintiff's background who: (1) was capable of lifting no more than 20 pounds occasionally, ten pounds frequently, with pushing and pulling limitations consistent with the lifting and carrying limitations; (2) was able to stand or walk for six hours out of an eight-hour day and able to sit for six hours out of an eight-hour day, provided he had a sit/stand option allowing between three and five minutes of change of position an hour; (3) was able to occasionally climb stairs and to bend and stoop, but without climbing ladders or scaffolding, (4) was able to occasionally power grip, torque or twist and occasionally flex or extend his wrists, and (5) was limited to "super-repetitive tasks requiring no safety operations or hyper-vigilance" and "no high production or rapid assembly line work." (Tr. at 372-73.) The VE

identified 4,700 inspector jobs, 6,000 bench assembler jobs, and 3,000 mail clerk jobs consistent with these hypothetical conditions. (Tr. at 373.)

The ALJ concluded that once Plaintiff reached "advanced age" under the Commissioner's regulations, he was to be found disabled. The regulations state that "advanced age" "significantly affects a person's ability to adjust to other work." 20 C.F.R. § 404.1563(e). As mentioned, the ALJ also considered Medical-Vocational Rule 201.02. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. This rule directs a finding of "disabled" where the person under consideration is of advanced age, limited education, whose work is skilled or semi-skilled, and whose skills are not easily transferrable.[3] After review of this record, I suggest that the evidence summarized above constitutes substantial evidence to document a deterioration of Plaintiff's condition as he aged, and supporting the ALJ's application of these regulations.

The ALJ did not find Plaintiff's allegations of disabling pain fully credible. (Tr. at 18.) Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain. First, the plaintiff must establish an underlying medical condition and, second, there must be either objective medical evidence to confirm the severity of the alleged pain rising from the condition or the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective

---

[3]The Commissioner has special rules that significantly limit the transferability of skills in individuals of advanced age. *See* 20 C.F.R. § 404.1568(d)(4).

symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.* An ALJ may give also less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645, at **3 (6th Cir. Ohio Feb. 11, 1999).

In the present case, the ALJ acknowledged that Plaintiff had an impairment that could cause pain; however, he found that the severe and debilitating nature of Plaintiff's alleged pain was not fully credible and provided reasons for this conclusion. The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Under this standard, I suggest that there is insufficient basis on this record to overturn the ALJ's credibility determination.

The ALJ's findings also follow the opinions of the vocational expert which came in response to proper hypothetical questions that accurately portrayed Plaintiff's individual physical impairments in harmony with the objective record medical evidence as presented by the treating and examining physicians, as well as the daily activities described by Plaintiff himself. (Tr. at 366-68.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is well within that "zone of choice

within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                 s/ *Charles E Binder*
                 CHARLES E. BINDER
Dated: November 17, 2008          United States Magistrate Judge

13

**CERTIFICATION**

      I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Cheryl J. Auger, Derri T. Thomas and the Commissioner of Social Security, and served on District Judge Battani in the traditional manner.

Date: November 17, 2008          By     s/Patricia T. Morris
                                                 Law Clerk to Magistrate Judge Binder